UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TROY ANTHONY JENKINS,

    Plaintiff,

v.                                                                             Case No. 8:21-cv-1380-TPB-SPF

JACOB BENJAMIN DURRANCE,

    Defendant.
_____/

## **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendant Jacob Benjamin Durrance's Motion for Summary Judgment, filed on September 25, 2023. (Doc. 23). *Pro se* Plaintiff Troy Anthony Jenkins submitted a response in opposition. (Doc. 30). After reviewing the motion, response, court file, and record, the Court finds as follows:

## **Background**

On the evening of July 27, 2020, Deputy Durrance responded to the scene of a suspected burglary in Mulberry, Florida. (Doc. 23-4 at 2). The victim had called 911 after seeing an unknown man inside her van, which was parked in her front yard. (*Id.*) When Deputy Durrance arrived, he observed Jenkins standing outside a vacant house next to the victim's

residence. (*Id.* at 3). Jenkins matched the description of the suspect—a "white male[ ] wearing a white tank top and black shorts." (*Id.*) Deputy Durrance therefore detained Jenkins, and the victim "positively identified [him] as the man she saw inside her . . . van." (*Id.*) After he was read his *Miranda* rights, Jenkins "denied being inside the van." (*Id.*) He admitted, however, that "he did not know the victim and did not have permission to be in her yard or inside her van." (*Id.*) Deputy Durrance arrested Jenkins for burglary of an unoccupied conveyance. (*Id.*)

A search of Jenkins's person revealed a "misdemeanor amount" of cannabis and "three prescription pills" inside a "baggie." (*Id.* at 3-4). Deputy Durrance identified two of the pills as Buprenorphine, for which Jenkins "could not a produce a valid prescription." (*Id.* at 4). Thus, Deputy Durrance also arrested Jenkins for possession of cannabis, possession of Buprenorphine, and possession of drug paraphernalia. (*Id.* at 4).

Jenkins had left his car parked on the street in front of the vacant house. (*Id.*; *see also* Doc. 23-1 at 8). Deputy Durrance knew the house was vacant; he also knew that it had been "the scene of multiple, recent calls for service due to criminal activity." (Doc. 23-4 at 4). Moreover, Jenkins did not live at this address. (*Id.*) Instead, he lived in Lake Alfred, a different city in Polk County. (*Id.*)

Jenkins told Deputy Durrance that his car "had broken down prior to [Deputy Durrance's] arrival and that it could not be started." (*Id.*) Deputy Durrance ultimately decided to have Jenkins's car towed. (*Id.*) That decision was based on the following considerations: (1) Deputy Durrance "was taking Jenkins into custody," (2) Jenkins had "said the vehicle was not operational," and (3) Deputy Durrance was concerned "that if the vehicle was left unattended[,] it could be a target of criminal activity." (*Id.*)

Before the towing service arrived, Deputy Durrance conducted an inventory search of the vehicle. (*Id.*) Nothing incriminating was found. (Doc. 23-1 at 8, 13-16). Deputy Durrance subsequently transported Jenkins to the police station. (*Id.* at 8). On the way there, Jenkins said, "[H]ey Durrance, when I get out, I'll see you at the bar and stomp your face into the ground." (Doc. 23-4 at 4). Asked to clarify "what he meant," Jenkins said, "I'll beat your f*****g a** when I see you out." (*Id.*)

Jenkins alleges that he was unable to retrieve his car or its contents because he was incarcerated. (Doc. 10 at 13). He brought this lawsuit, alleging that Deputy Durrance violated the Fourth Amendment by impounding and searching his vehicle.[1] (*Id.* at 12-13). Jenkins seeks to

---

[1] Jenkins does not challenge the legality of his arrest in this action. (Doc. 10). He ultimately pled guilty to trespassing, threatening a law enforcement officer with serious bodily harm,

- 3 -

recover the value of the car, which he claims is $7,500, and the value of the personal items that were inside the car when it was impounded, which he alleges is $1,800. (*Id.* at 14). He also seeks unspecified declaratory and injunctive relief and $1,009,500 in compensatory and punitive damages. (*Id.*)

Deputy Durrance moves for summary judgment, arguing that he is entitled to qualified immunity because the search and impounding of the car "did not violate any right of [Jenkins's] which was clearly established at the time the actions were taken." (Doc. 23 at 6).

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A properly supported motion for summary judgment is not defeated by the existence of a factual dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Only the existence of a genuine issue of material fact will preclude summary judgment. *Id.*

The moving party bears the initial burden of showing that there are no genuine issues of material fact. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d

---

possession of Buprenorphine, possession of cannabis, and possession of drug paraphernalia. *State v. Jenkins*, No. 2020-CF-5816, Doc. 40 (Fla. 10th Jud. Cir. Ct.).

1256, 1260 (11th Cir. 2004). When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing the existence of genuine issues of material fact. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995). If there is a conflict between the parties' allegations or evidence, the nonmoving party's evidence is presumed to be true and all reasonable inferences must be drawn in the nonmoving party's favor. *Shotz v. City of Plantation*, 344 F.3d 1161, 1164 (11th Cir. 2003). In deciding a motion for summary judgment, the Court "need not consider materials not cited by the parties." *A.L. v. Jackson Cnty. Sch. Bd.*, 635 F. App'x 774, 786 (11th Cir. 2015); *see also* Fed. R. Civ. P. 56(c)(3).

Because Jenkins is proceeding *pro se*, the Court more liberally construes the pleadings. *Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008). However, a *pro se* plaintiff must still conform to procedural rules, and the Court does not have "license to act as *de facto* counsel" on behalf of a *pro se* plaintiff. *United States v. Padgett*, 917 F.3d 1312, 1317 (11th Cir. 2019).

## Analysis

For the reasons that follow, the Court concludes that Deputy Durrance is entitled to qualified immunity for his decision to impound and search Jenkins's car.

To invoke qualified immunity, the defendant must first show that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Fish v. Brown*, 838 F.3d 1153, 1162 (11th Cir. 2016). Once that is established, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Paez v. Mulvey*, 915 F.3d 1276, 1284 (11th Cir. 2019). To do so, the plaintiff must show two things: (1) "when viewed in the light most favorable to him, a material question of fact exists about whether" the defendant violated the plaintiff's constitutional rights, and (2) those rights were "clearly established in light of the specific context of the case." *Patel v. City of Madison*, 959 F.3d 1330, 1338 (11th Cir. 2020) (internal quotation marks and citation omitted).

Deputy Durrance's actions plainly fell within the scope of his discretionary authority. Accordingly, to defeat summary judgment, Jenkins must show that material issues of fact remain about whether Deputy Durrance violated his clearly established constitutional rights. Jenkins fails to make the required showing.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "[S]earches undertaken without a warrant issued upon probable cause are *per se* unreasonable under

the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Swint v. City of Wadley, Ala.*, 51 F.3d 988, 995 (11th Cir. 1995). Likewise, "the seizure of personal property is *per se* unreasonable when not pursuant to a warrant issued upon probable cause," but this "general rule" is subject to "[s]everal exceptions." *Crocker v. Beatty*, 886 F.3d 1132, 1136 (11th Cir. 2018).

Deputy Durrance contends that the search and impoundment of Jenkins's car were permissible under the "inventory search" exception to the warrant requirement. (Doc. 23 at 12-19). "Though the police generally need a warrant to conduct a search, they do not need a warrant to search an impounded car if they (1) had the authority to impound the car, and (2) followed department procedures governing inventory searches." *United States v. Isaac*, 987 F.3d 980, 988 (11th Cir. 2021). "An officer has the authority to impound a car if his decision to impound it is 'in good faith, based upon standard criteria, and not solely based upon suspicion of evidence of criminal activity.'" *Id.* at 988-89 (quoting *Sammons v. Taylor*, 967 F.2d 1533, 1543 (11th Cir. 1992)). "Once a car is lawfully impounded, officers may conduct a warrantless inventory search of it if they continue to follow 'standardized criteria.'" *Id.* at 989 (quoting *Sammons*, 967 F.2d at 1543). The purpose of requiring standard criteria is to ensure that impoundments and inventory

- 7 -

searches are not merely "a ruse for a general rummaging in order to discover incriminating evidence." *Florida v. Wells*, 495 U.S. 1, 4 (1990).

Viewing the facts in the light most favorable to Jenkins, the Court concludes that Deputy Durrance lawfully impounded the vehicle. Deputy Durrance followed "standard criteria" when he decided to have the vehicle towed. *Isaac*, 987 F.3d at 988-89. Under General Order 66.2 of the Polk County Sheriff's Office, deputies "shall arrange for the removal and storage of vehicles" in certain circumstances, including where the vehicle creates a "[t]raffic hazard" or "obstruction." (Doc. 23-3 at 2). Here, Jenkins's car was broken down on the street in front of a vacant house, and he had just been arrested for burglary and several drug offenses. In these circumstances, General Order 66.2 authorized Deputy Durrance to arrange for the removal of Jenkins's inoperable car, which posed a "[t]raffic hazard" on a public street. (Doc. 23-3 at 2).

Moreover, the decision to impound the car was made "in good faith" and "not solely based upon suspicion of evidence of criminal activity." *Isaac*, 987 F.3d at 988-89 (quoting *Sammons*, 967 F.2d at 1543). As noted above, Deputy Durrance knew that the vacant house had been "the scene of multiple, recent calls for service due to criminal activity." (Doc. 23-4 at 4). Thus, he reasonably believed "that if the vehicle was left unattended [outside the

vacant house,] it could be a target of criminal activity." (*Id.*) Even a "lawfully parked car" "may be impounded when the circumstances present an 'appreciable risk of vandalism or theft.'"[2] *United States v. Vladeff*, 630 F. App'x 998, 1000 (11th Cir. 2015) (quoting *United States v. Staller*, 616 F.2d 1284, 1290 (5th Cir. 1980)).

Because the car was "lawfully impounded," Deputy Durrance was authorized to "conduct a warrantless inventory search of it if [he] continue[d] to follow 'standardized criteria.'" *Isaac*, 987 F.3d at 989 (quoting *Sammons*, 967 F.2d at 1543). The undisputed facts show that Deputy Durrance adhered to standardized criteria when he searched the car. General Order 66.2 states that, "to protect the vehicle . . . , its owner, the impounding deputy sheriff, and the Sheriff's Office from legal action, the contents of each vehicle . . . shall be ascertained and inventoried." (Doc. 23-3 at 1). The "contents of the vehicle" include "[a]ll packages and containers located within the passenger compartment," "[g]love compartment," "[t]runk," and "[a]ny other secured and unsecured area of the vehicle." (*Id.*) Deputy Durrance complied with these directives. He searched Jenkins's vehicle, photographed what he found, and

---

[2] Jenkins speculates that Deputy Durrance had "a personal vendetta against him . . . due to the fact that he wanted to search [his] secured legally parked vehicle that was not involved in a crime." (Doc. 30 at 4). But Jenkins produces no evidence that Deputy Durrance's decision to impound the vehicle was motivated by "a personal vendetta." (*Id.*)

"completed a vehicle insert inventory." (Doc. 23-1 at 8, 13-16). Accordingly, the warrantless search of the vehicle was lawful.

Jenkins contends that Deputy Durrance acted unlawfully because he failed to consider an alternative arrangement for the car—specifically, leaving it on the street "overnight." (Doc. 10 at 13). This argument lacks merit. "[I]f law enforcement officials have the authority to conduct a valid impoundment, they are not constitutionally required to permit an arrestee to make an alternative disposition of his vehicle." *United States v. Glover*, 441 F. App'x 748, 752 (11th Cir. 2011). For the reasons explained above, Deputy Durrance had "the authority to conduct a valid impoundment." *Id.* Therefore, he was not required to allow Jenkins to "make an alternative disposition of [the] vehicle." *Id.*; *see also United States v. Dennis*, No. 5:17-cr-22, 2018 WL 2994665, at *4 (M.D. Ga. June 14, 2018) ("Even if . . . it may have been safe to leave the car where it was parked, that other less intrusive means, besides impoundment, could have been employed to prevent theft and ensure public safety does not necessarily render the decision to impound the vehicle unreasonable.").

In sum, Deputy Durrance's "decision to impound and the method chosen for implementing that decision were, under all the circumstances, within the realm of reason." *Sammons*, 967 F.2d at 1543. Moreover, he

- 10 -

followed "standard criteria" in searching and impounding the vehicle. *Isaac*, 987 F.3d at 988-89. Because no reasonable jury could find that Deputy Durrance violated the Fourth Amendment, he is entitled to qualified immunity.[3]

Accordingly, and for the reasons set forth herein, it is **ORDERED** that:

1. Deputy Durrance's Motion for Summary Judgment (Doc. 23) is **GRANTED**.

2. The Clerk is **DIRECTED** to enter final judgment in favor of Defendant Jacob Benjamin Durrance, and against Plaintiff Troy Anthony Jenkins.

3. Following the entry of judgment, the Clerk is directed to terminate any pending motions and deadlines, and thereafter close this case.

**DONE** and **ORDERED** in Tampa, Florida, on August 26, 2024.

---

[3] In opposition to the motion for summary judgment, Jenkins submits an undated letter from Amy Lansdale, apparently a neighbor of the victim in this case. (Doc. 30-1 at 3). This statement is not sworn under oath, nor does it contain a certification that its contents are true under penalty of perjury. Accordingly, it cannot be considered for purposes of summary judgment. *See Carr v. Tatangelo*, 338 F.3d 1259, 1273 n.26 (11th Cir. 2003) ("Unsworn statements . . . cannot be considered by a district court in ruling on a summary judgment motion."); *Roy v. Ivy*, 53 F.4th 1338, 1348 (11th Cir. 2022) (noting that "an unsworn statement" cannot "substitute for a sworn affidavit" unless the declarant "subscribe[s] its content as 'true' [ ] under 'penalty of perjury'").

*/s/ Tom Barber*

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**